IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 4, 2001 Session

## RICHARD LEE CONROY v. CITY OF DICKSON, ET AL.

### Appeal from the Circuit Court for Dickson County
#### No. CV235     Leonard W. Martin, Judge

---

### No. M2000-01189-COA-R3-CV - Filed February 23, 2001

---

The driver of an automobile sued the City of Dickson under the Governmental Tort Liability Act for the severe injuries he suffered when a city police cruiser collided with his car. After a bench trial, the court found that the plaintiff and the officer driving the police car were equally responsible for the accident, resulting in no recovery for the plaintiff. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, JJ., joined.

William H. Poland, Clarksville, Tennessee, for the appellant, Richard Lee Conroy.

Kristin Ellis Berexa and J. Russell Farrar, Nashville, Tennessee, for the appellees, City of Dickson, City of Dickson Police Department and John L. Baynham, Jr.

### OPINION

#### I.
##### ACCIDENT AND TRIAL

This case arose from an accident that occurred at approximately 7:30, on the night of November 30, 1992. Richard Conroy had been driving his Geo Metro on Interstate 40, and he exited onto Highway 46 near Dickson to look for a motel to spend the night. He traveled north along Highway 46 for about one hundred and fifty yards, and came to a stop. He intended to turn left across the southbound lane of Highway 46 onto Gum Branch Road where an EconoLodge Motel was located.

Mr. Conroy testified that he waited for the southbound traffic to pass him, and that once the last visible oncoming vehicle passed, he saw a "glow of lights" shining over the crest of a hill which was about one hundred seventy-five to two hundred feet to his north. Thinking that it was safe to

make the left turn, he began to do so. A police cruiser driven by Officer John Baynham came over the hill, followed closely by another cruiser driven by Officer Tommy Beale. Officer Baynham's car plowed into the passenger side of Mr. Conry's Geo, demolishing it, and causing serious injury to Mr. Conroy.

On June 28, 1993, Mr. Conroy filed a complaint for negligence in the Dickson County Circuit Court. Mr. Conroy claimed that Officer Baynham was acting within the scope of his employment at the time of the accident, and he named the City of Dickson, the City of Dickson Police Department and Officer Baynham as defendants. Mr. Conroy asked for $150,000 in damages. His wife Shirley joined in the complaint, and asked $50,000 for loss of consortium and other damages.

On August 16, 1999, the defendants filed their Answer. They admitted that Officer Baynham was acting within the scope of his employment, but denied that he was guilty of any negligence. The Answer included a Counter-Claim, which alleged that the accident was actually caused by Mr. Conroy's negligence, and asked for $25,000 in damages. In the event the court determined both parties to be negligent, the defendants asked that any damages be apportioned between the parties in accordance with the principles of comparative fault. *See McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992).

Since the City admitted that the officer was its employee and was acting within the scope of his employment, the Governmental Tort Liability Act, Tenn. Code. Ann. § 29-20-101, et seq., applied. Therefore, Officer Baynham was dismissed as a defendant without prejudice. *See* Tenn. Code. Ann. § 29-20-310. The parties were further winnowed on January 24, 1995, when Shirley Conroy filed a Notice of Nonsuit.

The trial of this case began on April 11, 2000. No reason for the lengthy interval between the accident and the trial appears in the record. The court heard testimony from nine witnesses, including Mr. Conroy, Officer Baynham, Officer Beale, a Highway Patrol officer, the Dickson Chief of Police, three civilian eyewitnesses, and one expert witness. At the conclusion of the proof, the court found both parties to be equally at fault, and assessed 50% of the fault to the plaintiff and 50% to the defendant. In accordance with the principles of comparative fault, as enunciated in *McIntyre v. Balentine*, supra, the court dismissed Mr. Conroy's claim against the City of Dickson, and the City's counterclaim against him. Mr. Conroy appealed.

## II.
### FINDINGS OF FACT

The parties enjoyed a complete evidentiary hearing before the trial court. In our review of this case, we must therefore presume that the trial court's findings of fact are correct, unless the preponderance of the evidence is otherwise. Rule 13(d), Tenn. R. App. P.

The court found that both Officer Baynham and Mr. Conroy were negligent. The proof showed that at the time of the accident, Officers Baynham and Beale were responding to a domestic disturbance call at the Holiday Inn. Another officer was already at the scene, so the dispatcher

advised them not to treat the call as an emergency, and neither Baynham nor Beale was using his sirens or blue lights.

There was conflicting testimony as to how fast the police cars were actually going just prior to the accident. The speed limit on that section of highway was 45 miles per hour. Officer Baynham denied that he was speeding at all (although he reportedly made an earlier statement that he couldn't have been doing more than 55). Officer Beale estimated the speed of both police vehicles to be between 45 and 55 miles per hour. Eyewitness Charles Macioci testified that it looked like the police car was going about 70 miles per hour. Karen Shadowens, another eyewitness, simply testified that she thought it was exceeding the speed limit. Roger Heath was asked if he could tell how fast the police cars were going, and he answered, "Not exactly. I mean, I didn't notice that they were speeding. They were just going along like regular traffic."

Richard Fitzgerald, the plaintiff's accident reconstruction expert, visited the accident site, viewed photos of the damage to both cars, interviewed the trooper who paced off the skid marks at the scene of the accident, and calculated a range of possible speeds from the data he gathered. He concluded that the police car was going at least 65 miles per hour at the time he applied the brakes.

The trial judge considered all this testimony, and determined that the testimony of Officer Baynham was not credible, and that he was in fact speeding. He observed that even a police officer has a duty to obey the speed limit, and that if he intends to exceed it, he should only do so if he knows it can be done safely. He thus concluded that Officer Baynham's conduct had to be considered negligent.

The judge also noted that a motorist intending to turn is supposed to yield the right-of-way to oncoming traffic, and should only turn after ascertaining that he can do so safely. The court found Mr. Conroy to be negligent for turning in front of the police car, and ruled that his negligence was equal to Officer Baynham's, and thus that under the version of comparative fault in effect in the State of Tennessee, Mr. Conroy was not entitled to recover from the defendant.

It appears to us that the location of the police car at the moment that Mr. Conroy began to turn has a bearing on the question of his degree of negligence. As we stated above, the plaintiff testified that he could only see the glow of the police car's lights from behind the hill when he began his turn. Karen Shadowens testified that Mr. Conroy "was into the turn to go" when the police car topped the hill. Officer Baynham testified that he was halfway down the hill when Mr. Conroy turned in front of him. Roger Heath was driving his pick-up truck directly behind Mr. Conroy, when the accident occurred. He testified that he could see the two police cars coming down the hill, that Mr. Conroy turned right in front of them, and that Officer Baynham had no chance to avoid the accident.

We must note that there were problems or inconsistencies with the testimony of all the eyewitnesses. Karen Shadowens and Charles Macioci were both impeached by prior recorded statements they had made about the accident. The trial court stated that Roger Heath was the most credible witness, and apparently credited his testimony that Mr. Conroy turned directly in front of

-3-

Officer Baynham. But even Mr. Heath's testimony was not free of problems, because as we stated above, he testified that the speed of the police car was normal, and the trial court found that it was in fact speeding.

Nonetheless, it is the role of the trial judge to assess the credibility of witnesses, and this court must accord great deference to that assessment. *Wells v. Tenn. Board of Regents*, 9 S.W.3d 779 (Tenn. 1999); *Harwell v. Harwell*, 612 S.W.2d 182, (Tenn. Ct. App. 1980). In this case, Mr. Heath's testimony implies a greater degree of fault on the part of Mr. Conroy than does the testimony of the other eyewitnesses, and supports the court's finding that both parties were equally negligent. We have thoroughly examined the record, and while the evidence might have supported a different conclusion, we cannot say that it preponderates against the trial court's finding.

### III.
### GROSS NEGLIGENCE AND COMPARATIVE FAULT

As an alternative argument, Mr. Conroy contends that his negligence and that of Officer Baynham may not be compared, because they differ not only in degree, but also in kind. He argues that he was at most guilty of ordinary negligence, while Officer Baynham's conduct has to be characterized as gross negligence.

We believe that the appellant is advancing this argument primarily as a vehicle to highlight the circumstances that he believed rendered Officer Baynham's excessive speed more deserving of blame than his own conduct. These include the officer's failure to use his siren, his knowledge that traffic along Highway 46 was sometimes heavy, his knowledge that there had been prior accidents along the road, and the poor visibility at that time of the evening. As we stated above, however, we do not believe that the evidence preponderated against the trial court's allocation of fault.

Gross negligence is a term that evolved out of the jurisprudence of contributory negligence as a way to avoid the harsh consequences of that doctrine. Under the purest form of contributory negligence, an injured plaintiff could not recover any damages from a negligent defendant, if the defendant could prove that the plaintiff himself was also guilty of negligence, however slight.

Gross negligence provided an exception to this rule. If a plaintiff could prove that the defendant was guilty of a higher degree of negligence than his own, then the ordinary negligence of the plaintiff did not operate as a bar to recovery. Gross negligence has been defined as arising from "a conscious neglect of duty or a callous indifference to consequences." *Thomason v. Wayne County*, 611 S.W.2d 585 (Tenn. Ct. App. 1980). Elsewhere, this court has said, "[g]ross negligence is not characterized by inadvertence. It is a negligent act done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Odum v. Haynes,* 494 S.W.2d 795 (Tenn. Ct. App. 1972).

With the case of *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), our Supreme Court swept away the doctrine of contributory negligence and many of its ancillary doctrines, stating that

"it is time to abandon the outmoded and unjust common law doctrine of contributory negligence and adopt in its place a system of comparative fault." 833 S.W.2d at 56. The Court observed that doing away with such a long-established doctrine would affect many other legal principles surrounding tort litigation, and stated that "[f]or the most part, harmonizing these principles with comparative fault must await another day." 833 S.W.2d at 57. However, for the guidance of trial courts charged with implementing the new system, the Court declared that comparative fault made the doctrines of remote contributory negligence and last clear chance obsolete, because the circumstances taken into account by those rules could henceforth be addressed within the context of relative degrees of fault. The court did not address the question of gross negligence.

The appellant suggests that we should look to the recent case of *Turner v. Jordan*, 957 S.W.2d 815 (Tenn. 1997) for guidance as to how we should deal with gross negligence. In that case, a hospital nurse was attacked and badly beaten by a psychiatric patient. She sued the treating psychiatrist for his failure to medicate, restrain, seclude or transfer the patient. Since there was no evidence that the nurse herself was negligent, the trial court instructed the jury to allocate fault between the psychiatrist and the patient. Following a verdict and an appeal to this court, the case reached the Supreme Court, which stated that

> "In our view, the conduct of a negligent defendant should not be compared with the intentional conduct of another in determining comparative fault, where the intentional conduct is the foreseeable risk created by the negligent tortfeasor . . . fairness dictates that [a negligent defendant] should not be permitted to rely upon the foreseeable harm it had a duty to prevent so as to reduce [his] liability."

957 S.W.2d at 823.

It appears to us that there is very little similarity between *Turner v. Jordan* and the present case. For example, while *Turner v. Jordan* involved the duty of the defendant to protect the plaintiff from the intentional conduct of a third party, there is no such triangulation of duty and conduct present here. Further, there is no implication in the record before us that Officer Baynham intended to cause an accident, or that his conduct could be characterized as anything other than negligent.

We must reject Mr. Conroy's proposition that we treat gross negligence in the same way as we treat intentional conduct, because we believe that would be an unhelpful step backward. One reason for instituting comparative fault in this state was for the simplification it offered. The proliferation of categories of conduct that required legal definition in order to mitigate the harsh effects of pure contributory negligence unnecessarily complicated the task of fixing liability, and resulted in legalistic hair-splitting and confusing jury instructions. As one commentator said,

> "The continuum of fault from negligence to gross negligence to wanton or willful conduct to recklessness is highly malleable. In particular, the phrase 'gross negligence' has been characterized by the Tennessee Supreme Court as 'Nothing more than negligence with the addition of a vituperative epithet'. . . [the] escalation

of pejorative labels unnecessarily complicates some trials and heightens the probability of emotional pleas to the jury."

C. Mutter, *Moving to Comparative Negligence in an Era of Tort Reform: Decisions for Tennessee*, 57 Tenn. L. Rev. 199, 211 (1990).

Although the Supreme Court did not explicitly declare the demise of gross negligence in *McIntyre,* we see no reason why negligent acts that might previously have been denominated as gross cannot be compared with other negligent acts, within the context of relative fault. In *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994), the Supreme Court discussed the status of the doctrines that have been abolished by the adoption of comparative fault, and declared that while they no longer had any independent existence, their underlying principles, if relevant, could still be considered by the finder of fact in allocating fault.

The court stated that,

"the percentage of fault assigned each party should be dependent upon all the circumstances of the case, including factors such as: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth."

891 S.W.2d at 592.

It appears to us that the considerations underlying the doctrine of gross negligence have been largely subsumed within the second factor listed above, and that there is no reason, from the point of view of precedent or of policy, to make it an exception to the system of comparative fault. The appellant's argument is without merit.

### V.

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Dickson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____

BEN H. CANTRELL, PRESIDING JUDGE, M.S.