IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 10, 2013 Session

# DONALD HARP AND MARY HARP v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY ET AL.

Appeal from the Circuit Court for Davidson County
No. 09C3418     Carol Soloman, Judge

_____

## No. M2012-02047-COA-R3-CV - Filed January 22, 2014

_____

In this governmental tort liability action involving two metropolitan government employees, Employee 1 drove a school bus into Employee 2, resulting in serious injuries. Employee 2 and his wife filed suit under the Governmental Tort Liability Act against metropolitan government alleging that Employee 1 was negligent while acting in the course and scope of her employment and that, therefore, metropolitan government was liable under the doctrine of respondeat superior. Metropolitan government filed a third-party complaint against Employee 1 seeking to recover lost wages and medical expenses paid to Employee 2. The trial court determined that statutory removal of metropolitan government's immunity for injuries caused by Employee 1's negligence resulted in Employee 1's immunity from liability. Accordingly, the trial court entered judgment for Employee 2 and his wife against metropolitan government. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Saul Solomon and J. Brooks Fox, Nashville, Tennessee, for the appellant, Metropolitan Government of Nashville and Davidson County.

Rocky McElhaney and Taylor C. Sutherland, Nashville, Tennessee, for the appellees, Donald and Mary Harp.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Donald Harp, a Metropolitan Government of Nashville and Davidson County ("Metro") employee, was walking across a parking lot in Metro's school bus depot when Connie Sherrill, another Metro employee, drove a school bus into Mr. Harp, resulting in serious injuries. Ms. Sherrill tested positive for marijuana and cocaine immediately after the accident.

Mr. Harp and his wife filed suit against Metro under the Governmental Tort Liability Act ("GTLA"), Tenn. Code Ann. § 29-20-101 *et seq*. Their first amended complaint included the following allegations:

> 5. The Plaintiffs aver that Ms. Sherrill was believed to be under the influence of illegal substances, including marijuana and cocaine, at the time of the collision. Upon information and belief, following the accident, the Defendant referred Ms. Sherrill to a local doctor for drug screening. Ms. Sherrill tested positive for the illegal consumption and use of marijuana and cocaine. Ms. Sherrill's driving capabilities were significantly impaired which caused or contributed to the incident complained of herein.[1]
>
> 6. Upon information and belief, the Defendant has in full force and affect a random drug screening program. At some point prior to Ms. Sherrill driving the bus into Mr. Harp, she was ordered to report for a random drug screen. Upon information and belief, Ms. Sherrill did not report to the drug screen but was still allowed to operate a school bus for the Defendant.
> . . .
> 8. In striking Mr. Harp's person with the school bus, Ms. Sherrill is guilty of common law negligence in failing to keep and maintain proper control of her vehicle, failing to keep a proper lookout, driving in a negligent manner, failing to yield the right of way to pedestrians, and driving too fast for the conditions then and there existing. Ms. Sherrill's common law negligence proximately caused or contributed to the injuries suffered by Mr. Harp. Ms. Sherrill was an employee of the Defendant and was acting in the course and scope of her employment at the time of the accident so as to make the Defendant liable for her negligent acts and/or omissions under the doctrine of *respondeat superior*

---

[1] For simplicity, we will refer to the allegations contained in this paragraph of the amended complaint as "paragraph 5."

and agency principles. Governmental immunity has been removed for this cause of action under the Tennessee Governmental Tort Liability Act.

Metro filed a third-party complaint against Ms. Sherrill to recover the benefits it was paying to Mr. Harp due to his injuries, alleging that she "willfully, wantonly and recklessly struck Mr. Harp with a school bus."

Shortly before the trial began, the Harps moved for judgment on the pleadings against Metro on the issue of Ms. Sherrill's negligence. Metro also moved for judgment on the pleadings. On the day of the trial, prior to the taking of any proof, the court heard arguments on these motions and "provisionally granted" the Harps' motion and denied Metro's motion, but proceeded to hear proof on all of the issues.[2] The parties stipulated that, at the time of the accident, Ms. Sherrill "was driving a school bus owned by Metro, on Metro property, and was acting in the course and scope of her employment, performing job duties assigned to her by Metro." During trial, Metro moved for an order to deem the Harps' allegations in paragraph 5 admissions and for an order to estop them from denying paragraph 5. The court denied both motions.

At the close of evidence, the court dismissed the third-party claim against Ms. Sherrill based on immunity and concluded that "Ms. Sherrill acted negligently and was immune pursuant to Tenn. Code Ann. § 29-20-310," that "Ms. Sherrill's negligent operation of the bus was the proximate cause of the harms and losses of the [Harps]," and that "Metro's immunity was removed for the negligent operation of the school bus by Ms. Sherrill in the course and scope of her employment pursuant to Tenn. Code Ann. § 29-20-202." The trial court awarded the Harps a $205,000 judgment against Metro.

Metro appeals.

## ISSUE PRESENTED

The central issue before us is whether the evidence preponderates against the trial court's finding that Ms. Sherrill's conduct amounted to negligence, thereby making Metro liable for Mr. Harp's injuries.

---

[2] In its August 24, 2012 order on the Harps' motion for judgment on the pleadings, the trial court clarified that "[t]he provisional ruling of the Court granting the motion was confirmed on the merits of the case and is included in the Judgment entered by the Court and the Court's oral ruling from the bench . . . ."

STANDARD OF REVIEW

In a civil case tried without a jury, we review the trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Our consideration of the preponderance of the evidence "is tempered by the principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such credibility determinations are entitled to great weight on appeal." *Rice v. Rice*, 983 S.W.2d 680, 682 (Tenn. Ct. App. 1998). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

ANALYSIS

Subject to statutory exceptions, the GTLA generally offers immunity to governmental entities from suit for any injury which may result from the activities of such governmental entities. Tenn. Code Ann. § 29-20-201(a). The GTLA provides that the government's immunity is removed "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . . " Tenn. Code Ann. § 29-20-205,[3] and specifically "for injuries resulting from the negligent operation by any employee of a motor vehicle . . . while in the scope of employment." Tenn. Code Ann. § 29-20-202(a). Under Tennessee Code Annotated section 29-20-310(b), if the governmental entity's immunity is removed, the employee is immune from suit.

The parties do not dispute that Ms. Sherrill's operation of the school bus in such a way as to hit Mr. Harp proximately caused his injuries or that Ms. Sherrill's actions occurred in the course and scope of her employment. Whether Metro's immunity is removed, therefore, depends on how we classify Ms. Sherrill's actions. If she was negligent in her operation of the school bus, then Metro's immunity from suit would be lifted under Tennessee Code Annotated sections 29-20-202(a) and -205. If, however, Ms. Sherrill's actions constituted more than mere negligence–e.g., gross negligence, willfulness, or recklessness, as Metro argues–then neither statutory section would operate to remove immunity, and the Harps' suit may proceed only against Ms. Sherrill. *See Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 369 (Tenn. 2011). Stated another way, did Ms. Sherrill fail to exercise reasonable care,[4] or did she display "'a conscious neglect of duty or a callous indifference to consequences'"? *Conroy v. City of Dickson*, 49 S.W.3d 868, 871 (Tenn. Ct.

___

[3] Tennessee Code Annotated section 29-20-205 is subject to several enumerated exceptions, all of which are inapplicable to this case.

[4] *See Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (discussing basic definition of negligence).

-4-

App. 2001) (quoting *Thomason v. Wayne Cnty.*, 611 S.W.2d 585, 587 (Tenn. Ct. App. 1980)) (defining gross negligence).[5]

At the outset, Metro argues that the allegations in paragraph 5 of the Harps' amended complaint conclusively establish two key facts that Metro "should not have been required to prove" at trial: (1) that Ms. Sherrill was intoxicated at the time of the accident and (2) that her alleged intoxication caused the accident and Mr. Harp's injuries. We cannot agree.

On their face, the allegations against Ms. Sherrill contained in paragraph 5 are specifically based "upon information and belief," in accordance with Tenn. R. Civ. P. 11.02.[6] Additionally, Mr. Harp testified that he gleaned the information about Ms. Sherrill through workplace rumors:

Q. Mr. Harp, how did you learn anything about Ms. Sherrill's drug test coming back positive?

A. Through safety supervisors.

Q. Did you–and that was based on somebody–so somebody told you these things?

A. Yes. It was the next day or day after actually, yeah.

Q. And you didn't know anything about drugs until somebody told you there

---

[5] *See also Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) ("A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.").

[6] Tennessee Rule of Civil Procedure 11.02 provides, in pertinent part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
. . .

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

was a drug screen that said positive?

A. Exactly.

Metro's argument also disregards the Harps' alternative plea of common law negligence in paragraph 8 of their amended complaint. In sum, the allegations in paragraph 5, standing alone, cannot prove that Ms. Sherrill was intoxicated at the time of the accident and that intoxication caused Mr. Harp's injuries, just as the allegations in paragraph 8, standing alone, cannot prove that Ms. Sherrill's failure to exercise reasonable care caused them. The Harps and Metro (as third-party plaintiff) each bore the burden of proving their claims.

We turn now to the evidence the parties presented at trial.

Mr. Harp recounted the details of the accident:

[I] started walking across the [parking] lot to head up to the front office. As I had crossed and got to the other side of where the turn was, I heard a bus as it was making the turn. I turned around to acknowledge that, you know–to wave at the driver to let them know that here I am on the lot. I don't know if she waved at me. I can't remember that part. But I do recollect that I was walking across the lot proceeding back to the stockroom area. The next thing I heard was the sound of the engine that was extremely close to me. It was too late. She had done turned into me.

Mr. Harp testified that he "did not have any personal interaction" with Ms. Sherrill after the accident, but that he remembered the first words she said were "did I just hit you?". In her deposition testimony, which was read into evidence, Ms. Sherrill stated that she "did not see [Mr. Harp]," "[h]e was in the blind spot," and "[i]f [she] had known he was there, [she] wouldn't have hit him." Mary Goodman, a longtime Metro bus driver, was the first to arrive at the scene. Her testimony was consistent with Ms. Sherrill's:

Q. Did you have a chance to talk to the driver of the bus?

A. No, I didn't. She just said that–when she got off the bus, that–she asked him was he okay. She said that she didn't see him.

Q. You heard Ms. Sherrill say she didn't see him?

A. Yes.

Q. Okay. Was she acting crazy to you or was she acting okay?

A. I really–I don't–I don't know. She just said that she didn't see him.

Ms. Sherrill further explained that she has suffered a "nervous breakdown" since the accident and that she chose to resign because having hit Mr. Harp "was more than [she] could stand."

Though Metro conceded at oral argument that the record contains evidence that Ms. Sherrill's conduct was "merely negligent," Metro contends that the results of a post-accident drug test that Ms. Sherrill took indicating that her urine sample tested positive for marijuana and cocaine establish that her conduct was reckless. However, there was no evidence before the trial court that Ms. Sherrill was impaired at the time of the collision with Mr. Harp, no evidence explaining the impact the levels of substances contained in the drug screen would have on her ability to drive, and no evidence that Ms. Sherrill drove the bus erratically or that the substances reflected in the positive drug screen impacted her activities on the date of the accident. Mr. Harp described Ms. Sherrill's demeanor after the accident as "out of it" and "dippy," but opined that those were general descriptions of her usual personality:

Q. Had you been around Ms. Sherrill before that day?

A. Yes, sir, I had.

Q. Had you seen her on the lot a number of times?

A. Yes, sir, I had.

Q. When you described her behavior, is that the same way you would have described her behavior the other times you'd seen her as well?

A. Yes, sir.

Q. You were describing her personality?

A. I'm sorry?

Q. You were describing her personality?

A. Yes, sir.

Q. You didn't see any lack of physical coordination that day?

A. No, sir.

Q. No stumbling, no slurred speech, nothing like that?

A. No, sir.

. . .

Q. Do buses have a blind spot on the right?

A. Yes. Yes, they do.

Ms. Sherrill denied using illegal drugs on the day of the accident. When questioned about the positive drug test results, Ms. Sherrill stated that they were unexpected because she does not use illegal drugs, but that she lacked the financial resources to challenge the drug screen. We credit the trial court's finding that the evidence fell short of establishing that Ms. Sherrill was more probably than not under the influence of drugs at the time of the accident. Furthermore, the evidence does not support a finding that her conduct was willful, reckless, or grossly negligent.

Based on the record before us, we conclude that the evidence does not preponderate against the trial court's finding that Ms. Sherrill acted negligently in the operation of the bus and by failing to see Mr. Harp. Consequently, Metro is not entitled to the protections of governmental immunity and Ms. Sherrill is immune from suit. We, therefore, affirm.

CONCLUSION

We affirm the trial court's order in its entirety. Costs of appeal are assessed against the Metropolitan Government of Nashville and Davidson County, Tennessee.

_____
ANDY D. BENNETT, JUDGE